**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**
**CIVIL ACTION NO. 4:18-CV-00176-HBB**

**TEDDY L. SCOTT**                                                                                    **PLAINTIFF**

**VS.**

**ANDREW SAUL,**
**Commissioner of Social Security**                                                          **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

### BACKGROUND

Before the Court is the complaint (DN 1) of Teddy Scott seeking judicial review of the final decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). Both the Plaintiff (DN 13) and Defendant (DN 18) have filed a Fact and Law Summary. For the reasons that follow, the undersigned orders the final decision of the Commissioner be reversed, judgment be entered in favor of Scott, and pursuant to sentence four of 42 U.S.C. § 405(g) this matter be remanded to the Commissioner for further proceedings.

Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 9). By order entered February 21, 2019 (DN 10), the parties were notified that oral arguments would not be held unless a written request therefore was filed and granted. No such request was filed.

<u>FINDINGS OF FACT</u>

Scott protectively filed an application for a period of disability and disability insurance benefits on September 25, 2015 and a subsequent application for supplemental security income on December 23, 2015 (Tr. 205-221). Scott alleged he became disabled on March 20, 2015 as a result of occupational asthma, vocal chord dysfunction, severe sleep apnea, diverticular disease, lower back pain, neurological issues, severe migraines, nausea, loss of appetite, vomiting, blood in stool, post-traumatic stress disorder (PTSD) (Tr. 247). Administrative Law Judge Maribeth McMahon ("ALJ") conducted a hearing on September 13, 2017 via video conference. Scott appeared in Owensboro, Kentucky and the ALJ presided from Paducah, Kentucky. Scott was represented by his attorney, Steve Wilson. Leslie F. Lloyd was present and testified as an impartial vocational expert (Tr. 17).

In a decision dated March 8, 2018 the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 17-30). At the first step, the ALJ found Scott has not engaged in substantial gainful activity since March 20, 2015, the alleged onset date (Tr. 19). At the second step, the ALJ determined that Scott's chronic bronchitis, irritable larynx, lower back pain, headaches, major depressive disorder, and PTSD are "severe" impairments within the meaning of the regulations (Tr. 19). The ALJ also determined that Scott's diverticulitis, ulcers, GERD, sleep apnea, obesity, are "non-severe" impairments within the meaning of the regulations (Tr. 20). At the third step, the ALJ concluded that Scott does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 21).

At the fourth step, the ALJ found Scott has the residual functional capacity to perform less than the full range of light work (Tr. 23). More specifically, the ALJ found that Scott can

occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds; stand, sit, and walk up to 6 hours in an 8-hour workday with normal breaks; climb ladders, ropes, and scaffolds occasionally; frequently climb ramps and stairs; frequently stoop, kneel, crouch, and crawl.  Scott should avoid moderate exposure to fumes, odors, dusts, gases, and poor ventilation; extreme heat, cold, and humidity; concentrated exposure to vibrations, unprotected heights, and dangerous machinery.  Scott can understand, remember, and carry out simple instructions; occasionally detailed instructions; maintain attention and concentration for the time required to complete simple tasks and occasionally detailed tasks.  Scott can respond appropriately to supervisors, co-workers, and the public and can adapt to routine changes and avoid hazards in a work setting with routine support and structure (Tr. 23).  Relying on testimony from the vocational expert, the ALJ found that Scott is unable to perform any of his past relevant work (Tr. 28).

The ALJ proceeded to the fifth step where he considered Scott's residual functional capacity, age, education, and past work experience as well as testimony from the vocational expert (Tr. 29).  The ALJ found that Scott can perform a significant number of jobs that exist in the national economy (Tr. 29).  Therefore, the ALJ concluded that Scott has not been under a disability, as defined in the Social Security Act, from March 20, 2015 through the date of the decision (Tr. 30).

Scott timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 134-36).  The Appeals Council denied Scott's request for review of the ALJ's decision (Tr. 1).

CONCLUSIONS OF LAW

Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton

v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied.  Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986).  "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way."  Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)).  In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility."  Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Scott's's request for review of the ALJ's decision (Tr. 1).  At that point, the ALJ's decision became the final decision of the Commissioner.  20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision).  Thus, the Court will be reviewing the decision of the ALJ, not the Appeals Council, and the evidence that was in the administrative record when the ALJ rendered the decision.  42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities.  42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income).  The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. *See* "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the residual functional capacity to return to his or her past relevant work?

5) Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Scott's claim at the fifth step.

<u>Challenged Findings</u>

I.  Dr. Norswothy's Opinion

Scott's first claim is the ALJ assigned too little weight to the opinion of his treating physician, Dr. Eric Norsworthy (DN 13 PageID # 963). Dr. Norsworthy's opinion limited Scott to less than sedentary work (Tr 721-83). However, the ALJ assigned it "no weight" because it was

not consistent with or supported by the medical evidence of record (Tr. 27). Scott argues the ALJ's assignment did not comport with the treating physician rule because the ALJ did not adequately explain her reasons for assigning the opinion no weight (DN 13 PageID # 964). The Commissioner disagrees. He argues the ALJ's finding that Dr. Norsworthy's opinion was inconsistent and unsupported by the medical evidence was appropriate, and the ALJ sufficiently supported her decision with substantial evidence (DN 18 PageID # 989).

Social Security regulations "provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." Gayheart v. Comm'r of Soc. Sec., 710 F. 3d 365 (citations omitted). The process of assigning weight to medical opinions in the record begins by determining whether to assign controlling weight to the medical opinion of the treating physician. The treating physician rule mandates that the ALJ give a treating physician's medical opinion controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." Gayheart, 710 F. 3d at 376. If the treating physician's opinion is not given controlling weight the opinion is weighed considering the length, frequency, nature, and extent of the treatment relationship, the treating source's area of specialty, its consistency with the rest of the record, and the extent it is supported by relevant evidence. 20 C.F.R. § 416.927(c)(2)-(6). "Good reasons" must be provided for discounting a treating source opinion. Id. § 416.927(c)(2)-(6). The reasons must be supported by the record and sufficiently specific to make clear to reviewers the weight given to a treating source's opinion and the reasons for the assigned weight. Gayheart, 710, F.3d at 376. (citing Soc. Sec. Rul. No. 96-2p, 1996 WL 374188, at 5 (Soc. Sec. Admin. July 2, 1996)).

The procedural requirements for assigning weight to a treating source opinion, especially the supplying of "good reasons" for that weight, serve both to ensure adequacy of review and to give the plaintiff a better understanding of the disposition of his case. Cole v. Astrue, 661 F.3d 931, 939 (6th Cir. 2011). "These procedural requirements are 'not simply a formality' and are intended 'to safeguard the plaintiff's procedural rights.'" Cole, 661 F.3d at 937 (citing Rogers v. Comm'r, 486 F.3d 234, 242 (6th Cir. 2007)). A court should not hesitate to remand when it encounters decisions from Administrative Law Judges that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion. Id. at 939 (citations omitted).

Here, the ALJ found that Scott can perform less than a full range of light work (Tr. 23). In reaching that conclusion the ALJ assigned no weight to the opinion of Dr. Norsworthy—Scott's treating physician. The ALJ's entire explanation for her assignment is "it is not consistent with or supported by medical evidence in the record" accompanied by citations to other medical evidence in the record (Tr. 27).

The ALJ's brief explanation does not satisfy the requirements set forth in 20 C.F.R. § 404.1527(c)(2). The ALJ did not provide "good reasons" for discounting Dr. Norsworthy's opinion. Moreover, the ALJ failed to elaborate on her consideration of the length, frequency, nature, and extent of the treatment relationships, the treatment sources' areas of specialty, the degree to which the opinions are consistent with the record as a whole and are supported by relevant evidence. The ALJ's reasons for discounting Dr. Norsworthy's opinion are insufficiently specific and in violation of the procedural requirements of the treating physician rule.

The procedural requirements of the treating physician rule ensure an adequate review and clear understanding of the disposition. Cole, 661 F.3d at 939 (6th Cir. 2011) (citing Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 242 (6th Cir. 2007)). The weight assigned to an opinion and

the reasons for that assignment should be made clear to reviewers. <u>Gayheart</u>, 710, F.3d at 376. (citing Soc. Sec. Rul. No. 96-2p, 1996 WL 374188, at 5 (Soc. Sec. Admin. July 2, 1996)). An administrative law judge's failure to sufficiently articulate her good reasons for discounting a treating physician's opinion is grounds for remand. <u>Id</u>. at 939 (citations omitted).

Although it is clear from the ALJ's analysis that she thoroughly engaged with the medical evidence in the record, her lack of explanation for her finding leaves a reviewer wanting. As support for their arguments, both Scott and the Commissioner parsed the ALJ's citations in an attempt to divine her meaning. For example, the ALJ cited Exhibit 2F pages 50, 52, 76, 133, and 134 as medical evidence that contradicts Dr. Norsworthy's opinion (Tr. 27). Page 50 consists of a single paragraph written by Dr. Sevin reviewing the results of a bronchodilator which states there is "no restriction present" (DN 8-7 PageID # 486). Scott argues that this is not contrary to Dr. Norsworthy's findings because he does not have constant labored breathing, but "experiences disabling symptoms with exertion" (DN 13 PageID # 964). The Commissioner disagrees, arguing the ALJ accounted for the Scott's symptoms by limiting his exposure to fumes, odors, gases, poor ventilation, extreme heat, cold, and humidity (DN 18 PageID # 986). Similarly, the parties contest the meaning of the ALJ's citation to Exhibit 2F page 133-134. Those pages are a Cardio/Respiratory/EEG Department Report from Ohio Country Hospital (DN 8-7 PageID # 569). Scott argues the results are consistent with Dr. Norsworthy's opinion. The report diagnoses Scott with "toxic exposure" and states Scott suffers from dyspnea at rest and upon exertion and a significant cough. Notably, the report suggests the tests were "poorly done" and incorrectly administered partly because Scott experienced heavy coughing and dizziness during the administration of the exam (<u>Id</u>. at 570). Scott argues that his coughing and dizziness during the administration of the exam is consistent with Dr. Norsworthy's opinion. However, the

Commissioner argues Scott misinterprets the ALJ's citation arguing it was included to indicate Scott suffered from dyspnea at rest and on exertion and the ALJ considered this earlier in her opinion. The only reference to this section of the medical record by the ALJ states, "Shortly thereafter, he experienced dyspnea at rest and exertion and underwent further evaluation, but in May and August 2015, testing failed to detect a respiratory obstruction (Exhibits 2F, pages 133 to 134, and 4f pages 34, and 38)" (Tr. 24) (citations original). Despite the Commissioner's claim, it is impossible to determine if the ALJ cited this section of the record to indicate Scott suffered from dyspnea or a respiratory obstruction was not detected.

This analysis could be repeated for all the ALJ's citations following her assignment of no weight to Dr. Norsworthy's opinion—but it is unnecessary. The example above demonstrates the fatal flaw in the ALJ's opinion. By limiting her explanation to citations from the medical record the ALJ did not follow the procedural requirements of the treating physician rule. Cole, 661 F.3d 931, 939 (6th Cir. 2011) (citing Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 242 (6th Cir. 2007)). Upon review, the reasons for the ALJ's assignment of no weight to Dr. Norsworthy's opinion are unclear. Gayheart, 710, F.3d at 376. (citing Soc. Sec. Rul. No. 96-2p, 1996 WL 374188, at 5 (Soc. Sec. Admin. July 2, 1996)). The undersigned is aware the ALJ's opinion should be read as a whole. See Hill v. Comm'r of Soc. Sec., 560 F. App'x 547, 551 (6th Cir. 2014). However, the ALJ's prior references to the medical record throughout her opinion do not adequately explain the purported inconsistency of Dr. Norsworthy's opinion. For that reason, Scott's application must be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings to remedy the above described defect in the original proceedings.

II.     Syncopal Episodes

Scott's second claim is that the ALJ failed to adequately consider his frequent syncopal episodes when formulating his RFC. Scott argues that despite his syncopal episodes being repeatedly referenced throughout the medical record, the ALJ only mentioned them once (DN 13 PageID # 968)(citing DN 8-2 PageID # 52). Scott adds that the ALJ did not ask the vocational expert about these episodes when determining if he could perform certain work. According to Scott this lack of discussion renders the ALJ's opinion unsupported by substantial evidence.

The Commissioner contests Scott's argument. Conceding the ALJ did not include a lengthy discussion of syncopal episodes, the Commissioner repeats a variation of his prior argument that the ALJ's RFC finding purportedly accounts for the syncopal episodes. Therefore, any error committed by the ALJ is harmless (DN 18 PageID # 990).

"The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory finding) and nonmedical evidence (e.g., daily activities, observations)." Social Security Ruling No. 96-8p, July 2, 1996. The ALJ mentioned Scott's syncopal episodes in the context of summarizing the medical opinion provided by Dr. Sevin—a pulmonary specialist (Tr. 52). Dr. Sevin opined that Scott was limited to light work and should avoid "respiratory irritants" that may trigger laryngospasm. Dr. Sevin advised against driving until laryngospasm episodes resolved for approximately six months because a spasm with resultant syncope could prove fatal (Tr. 52 citing Tr. 664, 683, 701, 813). The ALJ afforded Dr. Sevin's opinion great weight, and issued an RFC with commensurate restrictions. Most notably, the ALJ limited Scott's exposure to fumes, odors, dusts, gases, poor ventilation, and extreme heat, cold, and humidity (Tr. 23)—which trigger syncopal episodes.

While the ALJ could have elaborated on the effect Scott's syncopal episodes had on her RFC assessment, it is clear from her conclusion and brief discussion that the episodes were considered. Harmless error analysis requires the party seeking the judgment set aside to demonstrate prejudice resulting from the error. <u>Shinseki v. Sanders</u>, 556 U.S., 396 (2009). Scott has not done so. To the extent the ALJ erred, it is harmless.

III.    New Evidence

Scott's final claim is that there is new and material evidence that relates to the period on or before the date of the hearing decision. The evidence is a vocational evaluation and employability assessment obtained during the litigation of a pending worker's compensation claim in Missouri. The issue is now moot because the undersigned is remanding the ALJ's decision for failure to comply with the treating physician's rule. Any newly acquired evidence may be presented to the ALJ on remand.

<u>ORDER</u>

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **REVERSED.**

**IT IS FURTHER ORDERED** that this matter is **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), to the Commissioner for further proceedings.

August 28, 2019

**H. Brent Brennenstuhl**
**United States Magistrate Judge**

Copies:        Counsel